**SO ORDERED.**

**SIGNED this 7 day of October, 2021.**

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Joseph N. Callaway
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

| | |
|---|---|
| IN RE:<br><br>Platinum Corral, LLC,<br>                Debtor.<br><br>**The Official Committee of Unsecured Creditors of Platinum Corral, LLC,**<br>                Plaintiff,<br>v.<br>**Pacific Premier Bank,**<br>                Defendant. | Case No.: 21-00833-5-JNC<br>Chapter 11<br><br><br><br><br>Adversary Proceeding No.:<br>21-00074-5-JNC |

## ORDER DISMISSING ADVERSARY PROCCEEDING

The matter before the court is the Motion to Dismiss Adversary Proceeding (A.P. Dkt. 11; the "Motion")[1] filed by Pacific Premier Bank ("PPB"). A hearing was conducted by videoconference on September 14, 2021 at 2:00 p.m., with the court sitting in Greenville, North Carolina. Attorneys Paul Malingagio, Jill Walters, and Theodore Cohen appeared for PPB.

---

[1] All references to "A.P. Dkt." refer to the official case docket for this adversary proceeding 21-00074-5-JNC. References to the official case docket in the lead chapter 11 case of Platinum Corral, L.L.C. case no. 21-00883-5-JNC are marked "Dkt. __."

Attorneys Daren Brinkman and Thomas Waldrep appeared for the Official Committee of Unsecured Creditors (the "Committee") appointed in this case pursuant to 11 U.S.C. §1102 on May 5, 2021 (Dkt. 131). At the conclusion of the hearing, the court took the matter under advisement. The matter is now ripe for determination.

## JURISDICTION

The court has jurisdiction over the parties and the subject matter in this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. It is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which the court may hear and determine. The court has constitutional authority to enter final judgment in this contested matter. *Wellness Int'l Network, Ltd., v Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1947 (2015).

## CASE HISTORY[2]

Platinum Corral, L.L.C. (the "Debtor") is a restaurant franchisee company headquartered in Jacksonville, North Carolina. Before the current pandemic, it operated twenty-eight Golden Corral restaurants located in North Carolina (11), Virginia (6), Ohio (4), West Virginia (3), Kentucky (3), and South Carolina (1). It has two members, its CEO and President, Mr. Louis William (Billy) Sewell, III, who owns 87.5%, and Mr. John Pierce, who owns the remaining 12.5%.

The Debtor suffered significant financial and operational issues beginning in March of 2020 due to the onset of the pandemic, forcing it to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 9, 2021 (the "Petition Date"). Since filing its chapter 11

---

[2] Any findings of fact and conclusions of law are limited to this ruling on standing and jurisdiction only. Nothing herein shall be deemed or constitute findings and conclusions beyond this order for any other purposes in the chapter 11 bankruptcy case or related adversary proceedings that may be later brought.

petition, the Debtor has operated as a debtor-in-possession under a series of cash collateral orders, the first being entered after a hearing on the Motion for Interim and Final Orders Granting Authority to Use Cash Collateral filed by the Debtor on April 12, 2021 (Dkt. 15). In that motion, the Debtor sought authority to use cash collateral generated from its retail operations asserted by it to be pledged as collateral to PPB for a series of prepetition loans made by PPB to the Debtor for an aggregate amount reportedly exceeding $18 million. Regarding that debt, on April 27, 2021, the Debtor (but not the Committee)[3] filed the Stipulation for Use of Cash Collateral, Providing Adequate Protection, and Granting Limited Relief from the Automatic Stay (Dkt. 106; the "Stipulation").

On July 16, 2021, the Committee filed a Complaint to (1) Determine the Validity, Priority, or Extent of a Lien or Other Interest in Property; (2) Avoid Certain Liens; (3) Obtain Declaratory Judgments; and (4) Disallow Claims Pursuant to 11 U.S.C. § 502(d) (A.P. Dkt. 1; the "Complaint"), initiating this adversary proceeding against PPB. In it, the Committee as plaintiff seeks avoidance of and preservation for the bankruptcy estate of PPB's asserted liens on certain collateral under 11 U.S.C. §§ 544(a) and 551; declaratory judgment regarding the validity, priority or extent of PPB's liens; declaratory judgment that any lien claim of PPB against the Debtor's inventory and sales would not constitute proceeds of that inventory and resultant cash collateral under 552(b)(1); and disallowance of PPB's security and other claims pursuant to 11 U.S.C. § 502(d).

---

[3] In Paragraph 23 of the Stipulation, PPB and the Debtor purport to bind other parties (including a hypothetical future trustee) to the Stipulation's terms in an overly expansive manner. However, the Stipulation remains only that—an agreement or promise made between two parties signing it. Since no order approving its terms and ratifying it has been entered by the court, the Stipulation is *not* the law of the case binding upon other parties. Any attempt to the contrary is or will be expressly rejected by the court.

In support of the Motion, PPB filed the Memorandum of Law (Dkt. 12; the "Memorandum") arguing that, among other sections, pursuant to § 1107(a), the Committee lacks standing to bring an action under § 544, and also lacks "Constitutional" or "prudential" standing. PPB further asserts that even if derivative standing is permissible in the Fourth Circuit, the Committee does not possess derivative standing because it did not receive approval from the court before filing the Complaint.

On September 14, 2021, the Committee filed its Response in Opposition to PPB's Motion to Dismiss (Dkt. 15; the "Response"), asserting that it has standing to bring this adversary proceeding for two reasons: (1) the Stipulation and subsequent orders in the chapter 11 case infer or contemplate third-party standing to bring an adversary proceeding challenging the PPB liens; and (2) the sole party with current standing, the Debtor, is barred from bringing an action to challenge the PPB liens. Therefore, according to the Committee, standing falls to others similarly situated or harmed, such as its constituency. Additionally, the Committee argues it has alleged sufficient underlying facts to demonstrate Constitutional standing regardless.

On September 9, 2021, PPB filed its Reply in Support of Motion to Dismiss (Dkt. 16; the "Reply") to rebut the Committee's argument that the Stipulation granted the Committee standing to bring this Adversary Proceeding. PPB argues that the Debtor and PPB merely agreed that Parties in interest could file and serve objections, not maintain third-party standing.

## **APPLICABLE STANDARD**

Federal Rule of Bankruptcy Procedure 7012(b) provides that Federal Rule of Civil Procedure 12(b) applies in adversary proceedings, stating in relevant part:

> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
> (1) lack of subject-matter jurisdiction; . . .

4

      (6) failure to state a claim upon which relief can be granted. . . .

Fed. R. Civ. P. 12(b).

      The Fourth Circuit recognizes that the line between Rule 12(b)(1) and Rule 12(b)(6) is blurred, but that "[a] 12(b)(1) motion addresses whether [a party] has the right to be in the district court at all and whether the court has the power to hear and dispose of his claim, and a 12(b)(6) motion addresses whether [a plaintiff] has stated a cognizable claim, a challenge to the sufficiency of the complaint." *In re Jones*, 618 B.R. 757, 762 (Bankr. S.C. 2020); quoting *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012).

      Federal courts are courts of limited jurisdiction and the burden of establishing subject matter jurisdiction is on the Plaintiff, the party asserting jurisdiction here. *In re James*, 2020 WL 6891913 (Bankr. M.D.N.C. 2020); citing *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010). The judicial doctrine of standing is "an integral component of the case or controversy requirement." *Payne v. Chapel Hill North Properties, LLC*, 947 F.Supp.2d 567, 571 (M.D.N.C. 2013); quoting *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52(4th Cir. 2011). Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction. *Id*.

      To have Constitutional standing, a plaintiff must show three elements: (1) a concrete and particularized injury in fact, (2) that this injury be fairly traceable to the defendant's conduct, and (3) that a favorable judicial decision would likely redress the injury. *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). Where a defendant argues a plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction and standing, the court must view all well-pleaded allegations in the complaint as true under the same standard as a Rule

5

12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. U.S*, 585 F.3d 187, 192 (4th Cir. 2009).

## DISCUSSION

PPB's arguments on lack of standing under Rule 12(b)(1) will be considered first because proper jurisdiction is a prerequisite to any ruling on sufficiency of facts asserted in support of a cause of action. *In re Cowart*, No. 15-10251, Adv. No 15-2028, 2015 WL 666776, at *4 (Bankr. M.D.N.C Oct. 29, 2015); see also, *Constantive v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479-80 (4th Cir. 2005).

As noted above, the Complaint alleges that PPB's security interests and liens on the Debtor's collateral are not properly perfected and are subject to avoidance under the strong-arm provisions found in § 544(a). If accurate, the Committee contends that unsecured creditors would most likely be entitled to a full recovery in this chapter 11 case. However, the Debtor will not (and as a practical matter cannot) challenge PPB's liens due to its dire need for operational funding. As a result, the Committee contends, unsecured creditors are sorely and unfairly injured without right of redress. This harm without legal remedy, the Committee contends, establishes Constitutional standing for the Committee as a matter of equity.

PPB argues that the lack of express statutory standing under § 541(a)(1), § 1107(a), or otherwise within the Bankruptcy Code to bring a claim under § 544(a) is fatal. Under § 544(a), a trustee may avoid any transfer of property or obligation incurred by a debtor that would be voidable by a creditor with a judicial lien, a creditor that obtains an execution that is returned unsatisfied, or a bona fide purchaser of real property from the Debtor. When a cause of action is a part of the bankruptcy estate, absent an order of a court to the contrary, only the trustee or debtor in possession possesses standing to bring the claim. *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132,

6

136 (4th Cir. 1988). As PPB points out, the Debtor is a debtor in possession and therefore has standing to challenge PPB's security interest and liens; however, it has chosen not to do so. The Committee counters this is specifically the problem: There is no trustee, and the Debtor's controlling member and CEO is inherently conflicted due to his personal liability for guaranteeing the Debtor's obligations to PPB.

In similar circumstances, other circuits have confirmed bankruptcy courts authority to convey derivative standing to third parties such as the Committee. *See, e.g., Smart World Techs., LLC v. Juno Online Servs., Inc.* (*In re Smart World Techs., LLC*), 423 F.3d 166, 176 (2d Cir. 2005); *Official Comm. Of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 583 (3d Cir. 2003) (en banc); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *Canadian Pac. Forest Prods. Ltd. V. J.D. Irving, Ltd.* (*In re Gibson Group, Inc.*), 66 F.3d 1436, 1440-41 (6th Cir. 1995); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247-48 (5th Cir. 1988). While the Fourth Circuit has yet to have the opportunity to address definitively the viability of derivative standing for Bankruptcy Code chapter 5 actions brought by entities other than a trustee or debtor, the Fourth Circuit has noted with apparent approval that other circuits allow derivative standing in such instances with "strict conditions." *In re Baltimore Emergency Servs. II, Corp.*, 432 F.3d 557, 561 (4th Cir. 2005) ("Even those circuits that permit derivative standing do so only under strict conditions.") The Fourth Circuit notes that as a matter of policy, prior formal determination of derivative standing is required to prevent a creditor from "unjustly hijacking the bankruptcy proceedings." *Id.* at 563. At the very least, derivative standing is routinely permitted by bankruptcy courts in orders confirming plans of reorganization, including this court. *See, e.g., In re Saks Development, Inc.*, No. 07-02215-8-JRL, 2008 WL 619378, at *2, (Bankr. E.D.N.C. February 29, 2008).

7

In discussing the "strict conditions" under which courts have allowed derivative standing, the Fourth Circuit approvingly cited the *Commodore* Test from the Second Circuit, which provides:

> A creditors' committee [or secured creditor] may acquire standing to pursue the debtor's claims if (1) the committee [or creditor] has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee [or creditor] is (a) in the best interest of the bankruptcy estate, and (b) is necessary and beneficial to the fair efficient resolution of the bankruptcy proceedings.

*In re Baltimore*, 432 F.3d at 561, quoting *In re Commodore Int'l, Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001) (internal quotation marks omitted).

Turning to the instant matter before the court, the Committee made no attempt, prior to filing the Complaint to satisfy prerequisites for derivative standing. It did not seek consent of the Debtor; it just barged right in. The Committee argues that prior approval from the Debtor or the court is unnecessary because Section Two of the Stipulation conveys consent for derivative standing. That provision recognizes that parties in interest may object to "Lender's lien on and security interest in the Pre-Petition Collateral." However, as noted above, the Stipulation is not an order of the court binding on third parties. Section Two of the Stipulation does not constitute PPB's consent to derivative standing in an adversary proceeding, but rather only states a condition in effect in the chapter 11 case regardless of its entry or nonexistence—that third parties are authorized under the Bankruptcy Code to challenge the claims of other parties under a contested motion objection process. The Stipulation neither adds to nor subtracts from the rights of third parties; it only applies between PPB and the Debtor. If the Committee is not bound by releases in the Stipulation, it cannot take advantage of its terms either. That sword cuts two ways.

Furthermore, the Committee did not seek the approval of the court before initiating this adversary proceeding. The bankruptcy court plays a vital gatekeeper role in determining whether

derivative standing is appropriate in a given case. *In re Baltimore*, 432 F.3d at 562. The Committee filed the Complaint without offering proof to the court that it was in the best interest of the bankruptcy estate or that it was necessary and fair to bring such a proceeding. Whether the court would grant such a motion remains open for another day.

## CONCLUSION

The motion to dismiss under Rule 12(b)(1) for lack of standing is GRANTED and this adversary proceeding is hereby Dismissed Without Prejudice. Because the plaintiff has failed to show present standing under Rule 12(b)(1), the court renders no decision as to whether the Complaint would survive scrutiny under a Rule 12(b)(6) motion by a party with standing, whether brought by a future trustee, the Committee if it obtains derivative standing in the future, or under a confirmed plan mechanism.

**END OF DOCUMENT**